**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| EVA WESTMORELAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.     4:17-cv-01626-AGF |
| | ) |
| MEDTRONIC, INC., MEDTRONIC USA, INC., and JEFF BELKOWSKI, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

COMES NOW Plaintiff and for Plaintiff's Response in Opposition to Defendants' Motion for Protective Order, states as follows:

**I.      Facts.**

Plaintiff Eva Westmoreland is the daughter of Betty Saulsbery who died on December 1, 2014, after the Defendants Medtronic, Inc., Medtronic USA, Inc. (together "Medtronic") and Jeff Belkowski's recommended the use of a stent graft that was the wrong size for Ms. Saulsbery's aortic anatomy. (Complaint ¶¶9-10)  Ms. Saulsbery's aorta then ruptured as a result of the surgical team over distending the aorta with a balloon in an attempt to widen the aorta to fit the oversized graft. Ms. Westmoreland filed suit seeking damages for the wrongful death of Ms. Saulsbery on June 6, 2017.

1

## II.   Background.

### 1.   Medtronic violated Rule 26(a)(1) and this Court's November 22, 2017 Case Management Order ("CMO") by refusing to disclose any documents by December 5, 2017, despite Plaintiff's repeated requests for documents since October 27, 2016.

Medtronic violated Rule 26(a)(1) and this Court's November 22, 2017 CMO (Doc. #21) by failing to produce any documents pursuant to the requirements of Rule 26(a)(1) by December 5, 2017. Medtronic's justification for failing to produce any documents in violation of its Rule 26 duties is that Medtronic believes it needs a protective order (*Exhibit 1*). Medtronic did not file a Motion for Protective Order in spite of this Court's clear instruction at the November 21, 2017 Rule 16 Conference that if Medtronic needed a protective order prior to disclosing documents they should "hurry up and file a motion." On December 22, 2017, Plaintiff served Plaintiff's First Request for Production of Documents on Medtronic with a cover letter seeking to resolve this matter, which apparently prompted Medtronic to file its Motion for Protective Order. (*Exhibit 2*).

Medtronic cannot claim surprise or a sudden, unexpected need for a protective order prior to disclosing documents relevant to this case. Plaintiff has been requesting the medical records related to Ms. Saulsbery's surgery in Medtronic's possession for more than a year. On October 27, 2016 and again on March 10, 2017, counsel for Plaintiff requested Defendant Medtronic's medical records related to the Ms. Saulsbery's surgery, including information related to the stent graft and information provided to Ms. Saulbery's surgeon by Defendant Belkowski. (*Exhibits 3 and 4*). On March 17, 2017, Medtronic advised Plaintiff that many of the requested medical records would only be produced pursuant to a protective order. (*Exhibit 5*). On April 11, 2017, after Plaintiff's counsel insisted that Medtronic's records related to Ms. Saulsbery were properly considered medical records of Ms. Saulsbery, Medtronic identified relevant, discoverable

2

documents which it had in its possession, but again refused to produce these medical records without entry of a protective order.  (*Exhibit 6*).  On October 6, 2017, Medtronic again stated its desire for a protective order, recognizing that a Motion for a Protective Order should be filed by November 14, 2017, prior to the Rule 16 Conference and the due date for Rule 26 disclosures.  (*Defendants' Exhibit C*).  However, Defendants never filed a Motion for Protective Order prior to the November 21, 2017 Rule 16 Conference and waited until after the Rule 26 deadline had passed and Plaintiff had served Plaintiff's First Request for Production to file the motion.

In the fourteen (14) months since Plaintiff's initial request for Medtronic's records related to Ms. Saulsbery, Medtronic has refused to produce relevant documents and medical records on the basis that it required a protective order.  Medtronic has unnecessarily delayed discovery in this case and now seeks to raise more barriers and unnecessary delays to the discovery process.

**2.      Medtronic's Proposed Protective Order unilaterally determines that Ms. Saulsbery's medical records in Medtronic's possession and documents that Medtronic publishes on the internet as Medtronic's private, proprietary information.**

Medtronic has proposed a sweepingly broad and needlessly complex protective order, that, incredibly, classifies Ms. Saulsbery's medical records as Medtronic's proprietary information.  Medtronic's designation of Ms. Saulsbery's records as its "proprietary" information violates Mo. Rev. Stat. § 191.227 which states that  "upon written request of a patient, or guardian or legally authorized representative of a patient" such medical records "shall be furnished." *Id*.  Furthermore, Medtronic's motion for protective order completely ignores the fact that Medtronic publishes most of its claimed "proprietary" information freely on the internet.  (*See* Exhibit 7 and § VII discussion, *infra*.)

3

Plaintiff has attached Plaintiff's proposed protective order which, in simple language, accurately reflects the proper means for the issuance of a protective order and the proper scope of confidentiality the Courts permit in our open court system.

### III.     Secrecy is disfavored by the Courts.

"The English common law, the American constitutional system, and the concept of the 'consent of the governed' stress the 'public' nature of legal principles and decisions. Throughout our history, the open courtroom has been a fundamental feature of the American judicial system. Basic principles have emerged to guide judicial discretion respecting public access to judicial proceedings. These principles apply as well to the determination of whether to permit access to information contained in court documents because court records often provide important, sometimes the only, bases or explanations for a court's decision." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983)

Fed.R.Civ.P. 26(b)(1), allows broad discovery of "any **nonprivileged** matter that is relevant to any party's claim or defense." (Emphasis supplied) The "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  As the Supreme Court noted in S*eattle Times Co. v. Rhinehart*, 467 U.S. 20, 30, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984):

> The [discovery] Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach. Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action.
> *Id*.

Furthermore, as noted by the court in *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539 (N.D. IN 1991), "[t]he general risk of public disclosure or collaborative sharing of information, . . . does not constitute good cause for a protective order under

4

Rule 26(c)." *Id.* at 545.  *See also e.g.*, *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) ("As a general rule, the public is permitted 'access to litigation documents and information produced during discovery.'") (quoting *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002)); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 857 (7th Cir. 1994) ("Absent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit."); *Public Citizen v. Liggett Group*, 858 F.2d 775, 790 (1st Cir. 1988) ("It is implicit in Rule 26(c)'s 'good cause' requirement that ordinarily (in the absence of good cause) a party receiving discovery materials might make them public."), *cert. denied*, 488 U.S. 130 (1989); *Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co.*, 748 F.2d 1421, 1424 (10th Cir. 1984) ("[P]arties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order"); *National Polymer Products, Inc. v. Bog-Warner Corp.*, 641 F.2d 418, 423 (6th Cir. 1981) ("The discovery rules themselves place no limits on what a party may do with materials obtained in discovery.").

**IV.     Medtronic has not demonstrated "good cause" that any documents should be subject to a protective order.**

The party seeking confidentiality has the burden of showing good cause for the entry of a protective order. *Seattle Times Company v. Rheinehart*, 467 U.S. 20, 37 (1984). To meet this burden, the party must present "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Company v. Bernard*, 452 U.S. 89, 102 n.16 (1981).  It is not enough to "[s]imply mention [] a general category of privilege." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1184 (9th Cir. 2006).  "Broad

allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3rd Cir. 1986).

Here, Medtronic has unilaterally declared that it is "beyond dispute" that some documents are highly confidential and should be the subject of a protective order, but Medtronic has failed to allege "particular and specific... fact[s]" which make its relevant documents proprietary or confidential entitling it to a protective order. *Gulf Oil Company v. Bernard*, 452 U.S. at 102 n.16. Medtronic summarily claims that some documents which may be produced in this litigation could qualify as "a trade secret []confidential research, development, or commercial information" under Rule 26(c)(1)(G). The United States Court of Appeals for the Eighth Circuit applies a test to guide the Courts in reconciling these competing interests, holding that:

> First, the **party opposing discovery must show that the information is a trade secret or other confidential research, development, or commercial information, under Rule 26(c)([G]) and that its disclosure would be harmful to the party's interest in the property**. The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial.
> If the party seeking discovery shows both relevance and need, the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information. If the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted, and the trade secrets are not to be revealed.
> *In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991)(Internal citations and quotations omitted)(Emphasis added).

Medtronic has not met its burden to demonstrate which documents being sought by Plaintiff contain "a trade secret []confidential research, development, or commercial information" under Rule 26(c)(1)(G). Nor has Medtronic provided " specific examples or articulated reasoning" demonstrating harm should a protective order not be entered. *Cipollone v Liggett Group, Inc.,* 785 F.2d at 1121. Therefore, Medtronic has failed to carry its burden to

6

demonstrate "good cause" under Rule 26(c) and its motion for a protective order should be denied.

**V.      Medtronic's proposed protective order reverses the burden of proof, requiring Plaintiff to prove that documents should not be confidential rather than first requiring Medtronic to prove there is good cause for a protective order as to the documents challenged.**

As stated above, "[t]he party seeking confidentiality has the burden of showing good cause[.]" *Seattle Times Company v. Rheinehart*, 467 U.S. at 37. Medtronic's proposed protective order shifts the burden to Plaintiff to demonstrate that certain documents should **not** be subject to the protective order, rather than requiring Medtronic to first satisfy its burden to prove that the documents in question should be deemed confidential.  Under Medtronic's proposed protective order, the burden falls solely to Plaintiffs as the party challenging confidentiality to file a Motion to Compel, requesting that this Court order the opposing party to remove the "confidential" designation.  Under this procedure the burden is improperly shifted to the challenging party (here, Plaintiff) to demonstrate that "good cause" for the confidentiality protection was not met as to certain documents.  Therefore, Medtronic's proposed protective order violates Rule 26(c), flips the procedure endorsed by the Eighth Circuit upside-down and should be denied.

**VI.     Medtronic's proposed protective order would force Plaintiff to violate ethical rules by requiring the destruction of documents at the end of this litigation.**

Medtronic's proposed protective order requires the destruction of discovery documents at the end of this litigation. (*Defendants' Exhibit A*, ¶¶5 and 10).  Protective orders which require the destruction of material at the end of litigation run afoul of the Rules of Professional Conduct. *See* Rule 4-1.15(j) of Missouri Rules of Professional Conduct (providing that a lawyer shall not destroy a client's file if he knows or reasonably should know "a criminal or other governmental investigation is pending related to the representation," if "other litigation" is pending related to

7

the representation, or if the file has "intrinsic value"). *See also* ABA Blueprint for Improving the Civil Justice System; Report to the American Bar Association Working Group on Civil Justice System Proposal, 74 (American Bar Ass'n 1992) ("No protective order should contain any provision that requires an attorney for a plaintiff in a tort action to destroy information or records furnished pursuant to such order."). Therefore, should the Court accept Medtronic's proposed protective order, Plaintiff's counsel would be required to violate the Rules of Professional Conduct and for this reason alone the Plaintiff should not be ordered to destroy any discovery material at the end of this litigation.

**VII.    Medtronic publishes the claimed proprietary information on the internet.**

With regard to the confidentiality of trade secrets, the 8th Circuit has held that "[b]ecause of the intangible nature of a trade secret [] the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others. **Public disclosure of trade secrets extinguishes the owner's property rights**." *In re Remington Arms Co., Inc.*, 952 F.2d at 1032 (Internal citations and quotations omitted)(Emphasis supplied).

Under Medtronic's proposed protective order, all information related to the sizing and specifications of Medtronic's stent graft technology would be protected and require all persons viewing this information to sign affidavits and secrecy agreements. However, in requesting such stringent protections Medtronic ignores that it freely publishes most of this information on the internet without restriction. A cursory Google search reveals that Medtronic publicly posts instructions on the use and sizing of it stent graft system on its website in both documentary and animated format.

The information Medtronic publishes on the internet includes:

- A 116 page Endurant II Instructions for Use - specific to the product model number, the title of which states ("This technical manual includes indications, contraindications, warnings, precautions, patient information, sizing, instructions, MRI information, and clinical use summary.") (The Table of contents is attached hereto as *Exhibit 7*.)

- The Endurant II Product Brochure;

- The Endurant II Short Neck Sell Sheet;

- The Endurant II Product Sell Sheet;

- The Endurant II OR Poster: Deployment & Component Placement Guide;

- Two separate Endurant II Deployment Animation Videos;

- The Endurant II Sizing Sheet;

- The Endurant II AAA Patient Information Booklet

Therefore, any suggestion by Medtronic that all information related to the sizing, use and specifications of its stent graft system is proprietary is totally undercut by the fact that Medtronic publishes all of this information freely on the internet.

## VIII. Plaintiff's proposed protective order complies with the Federal Rules and offers Defendants protections.

Under Plaintiff's proposed protective order, the language and effect is simple.  Medtronic can designate certain documents that it believes, in good faith, are legitimately proprietary and should be made confidential.  Should Plaintiff dispute this designation, the proposed order allows for a process by which this dispute can be resolved by conferral between the parties without the Court's involvement.  Should the parties not be able to resolve the dispute, then the parties would have the right to bring the dispute to the Court for adjudication.  Medtronic would then have the burden of demonstrating the need for the confidential designation, pursuant to the Federal Rules.

9

WHEREFORE Plaintiff respectfully moves this Court make and enter its Order Denying Defendants' Motion for Protective Order, and for such other and further relief as the Court deems just and proper, the premises considered.

DOWD & DOWD, P.C.

BY:   /s/ Douglas P. Dowd
DOUGLAS P. DOWD (MO29240)
ALEX R. LUMAGHI (MO56569)
LIA OBATA DOWD (MO60999)
KEVIN D. LANE (MO66027)
Attorneys for Plaintiff
211 North Broadway, Suite 4050
St. Louis, Missouri   63102
(314) 621-2500
Fax No. (314) 621-2503
doug@dowdlaw.net
alex@dowdlaw.net
lia@dowdlaw.net
kevin@dowdlaw.net

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 29, 2017, a copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system on all counsel of record.

/s/ Douglas P. Dowd
